**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JEFFREY MCKELLOP,
*Address filed under Seal,*
Plaintiff,

-against-

UNITED STATES OF AMERICA,
*c/o U.S. Attorney's Office, District of Columbia,*
*950 Pennsylvania Avenue, NW Washington, DC 20530*

MERRICK GARLAND, individually,
*601 D. Street NW, Washington, DC 20530*

MATTHEW GRAVES, individually,
*601 D. Street NW, Washington, DC 20530*

DONALD W. WASHINGTON, individually,
*Jones Walker LLP, Suite 1600, 600 Jefferson St,*
*Lafayette, LA 70501*

KATHLEEN LANDERKIN, individually,
*Warden, Baltimore Pre-Trial Complex,*
*300 E. Madison Street, Baltimore, MD 21202*

ROBERT ANTHONY DIXON, individually,
*U.S. Marshals Service, Superior Court of D.C.,*
*Moultrie Courthouse, 500 Indiana Avenue NW,*
*Washington, DC 20001*

and

JOHN DOES 1-25, individually,

Defendants.

Civil Action No.

JURY TRIAL DEMANDED

**COMPLAINT**

Plaintiff JEFFREY MCKELLOP (hereinafter, "Plaintiff" or "McKellop") by and through his attorneys, Raiser, Kenniff & Lonstein, P.C. brings this Complaint and respectfully alleges as follows:

**NATURE OF THE ACTION**

1. This is a civil action for damages arising from Defendants' violations of Plaintiff's rights under the United States Constitution, as well as for tortious conduct actionable under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680.

2. Plaintiff was targeted, arrested, prosecuted, and punished because of his constitutionally protected expressive and associational activity as a member of the protesters who gathered at the U.S. Capitol on January 6th, 2021 (hereinafter, the group of people prosecuted for their activities at or near the Capitol Building on January 6th, 2021, will be referred to as the "January 6th Defendants"). Through retaliatory prosecution, discriminatory detention practices, deliberate indifference to Plaintiff's health and safety, and other unlawful conduct, Defendants violated Plaintiff's constitutional rights and caused severe physical, emotional, reputational, and economic injury.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346(b).

4. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. Jurisdiction over Plaintiff's constitutional claims against individual federal officers is conferred by *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"), and its progeny.

6. Jurisdiction over Plaintiff's claims against defendant UNITED STATES OF AMERICA (the "United States") is conferred by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680.

7. To the extent Plaintiff asserts constitutional claims against District of Columbia correctional officials acting under color of District of Columbia law, jurisdiction is also conferred by 42 U.S.C. § 1983.

8. This Court has personal jurisdiction over the individual federal officers pursuant to 28 U.S.C. § 1391(e).

9. This Court has personal jurisdiction over defendant KATHLEEN LANDERKIN pursuant to the District of Columbia Code §§ 13-422 and 13-422(a)(3).

10. Plaintiff attempted to file administrative grievances to timely contest his mistreatment while incarcerated at the District of Columbia Department of Corrections (hereinafter, "D.C. Jail"), but the grievance forms Plaintiff attempted to file were intentionally and arbitrarily mishandled and/or denied by personnel at the D.C. Jail.

11. Grievances were returned as not grievable or with a rejection of the allegations made. Furthermore, filing grievances led to Plaintiff experiencing retaliation in various psychological and physical forms. This included, but was not limited to, unjust solitary confinement and sleep deprivation.

12. In other words, Plaintiff exhausted all administrative remedies that were available to him. To the extent Defendants contend otherwise, the grievance system was unavailable because grievances were not processed, Plaintiff was not informed of appeal rights, grievances were resolved without meaningful review, and officials retaliated against Plaintiff for using the grievance system.

13. On or about December 11, 2025, Plaintiff transmitted four administrative Notices of Claim to the United States Department of Justice ("DOJ") and Bureau of Prisons ("BOP") setting forth the factual basis for his claims and demanding a sum certain. More than six months elapsed without final denial.

14. As of the date of this Complaint, the United States failed to settle or issue a final denial of Plaintiff's claims within the statutory period. More than 180 days had elapsed, resulting in constructive exhaustion under 28 U.S.C. § 2675(a).

**PARTIES**

15. Plaintiff is a United States citizen and resident of Augusta County, State of Virginia.

16. Defendant UNITED STATES OF AMERICA is sued pursuant to the FTCA for tortious acts and omissions of federal employees acting within the scope of their employment.

17. Defendant MERRICK GARLAND ("Garland") is sued in his individual capacity for actions taken while serving as Attorney General of the United States.

18. Defendant MATTHEW M. GRAVES ("Graves") is sued in his individual capacity for actions taken while serving as United States Attorney for the District of Columbia.

19. Defendant DONALD W. WASHINGTON ("Marshal Washington") is sued in his individual capacity for actions taken while serving as the director of the United States Marshals Service ("USMS").

20. Defendant DEPUTY WARDEN KATHLEEN LANDERKIN ("Deputy Warden Landerkin") is sued in her individual capacity for actions taken while serving as the Deputy Warden of the D.C. Jail.

21. Defendant ROBERT ANTHONY DIXON ("Marshal Dixon") is sued in his individual capacity for actions taken while serving as the U.S. Marshal for the USMS for the Superior Court of the District of Columbia.

22. JOHN DOES 1-25, individually, include but are not limited to unknown agents, officers, employees, supervisors, policymakers, prosecutors, public-affairs personnel, and other officials of the United States Department of Justice, the United States Attorney's Office for the District of Columbia, and/or the Federal Bureau of Investigation who personally participated in, directed, approved, ratified, supervised, or knowingly permitted the investigative, public-facing, charging, prosecutorial, search, arrest, or other law-enforcement actions complained of herein.

## FACTUAL ALLEGATIONS

23. Plaintiff Jeffrey McKellop is a 22.5-year military veteran, having served in the U.S. Army Special Forces. During Mr. McKellop's 22.5 years of active service, Plaintiff received numerous Decorations, Medals, Badges, Citations and Campaign Ribbons, including 3 Bronze Stars and a Meritorious Service Award.

24. On January 6th, 2021, a joint session of the United States Congress convened at approximately 1:00 p.m. to certify the Electoral College vote of the 2020 Presidential Election.

25. On that day, Plaintiff was present in Washington, D.C. to exercise his First Amendment rights by attending a political rally and protesting the certification of the Electoral College vote.

26. In early February 2021, several photographs of Plaintiff began to appear on the FBI's website. Plaintiff, via counsel, began to reach out to the government, including the FBI and the U.S. Attorney's Office. By mid-February 2021, Plaintiff's attorneys were able to make contact with the U.S. government and identify Plaintiff as the person the FBI was looking for. A self-surrender was arranged and on March 17, 2021, Plaintiff voluntarily surrendered to FBI headquarters to be arrested for his actions at the Capitol on January 6th.

27. Subsequently, the indictment against Plaintiff was unsealed on March 18, 2021. The criminal action proceeded in the United States District Court, District of Columbia, under Case No. 21-cr-268.

28. A final superseding indictment was entered on May 25, 2022. Plaintiff was charged with violating:

a. 18 U.S.C. § 111(a)(1): Assaulting, Resisting, or Impeding Certain Officers;

b. 18 U.S.C. §§ 111(a)(1) and (b): Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, Inflicting Bodily Injury;

c. 18 U.S.C. § 231(a)(3): Civil Disorder;

d. 18 U.S.C. § 1752(a)(1) and (b)(1)(A): Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon;

e. 18 U.S.C. § 1752(a)(2) and (b)(1)(A): Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon;

f. 18 U.S.C. § 1752(a)(4) and (b)(1)(A): Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon; and

g. 40 U.S.C. § 5104(e)(2)(F): Act of Physical Violence in the Capitol Grounds or Buildings.

29. Prior to his arrest, Plaintiff voluntarily retained counsel, voluntarily contacted federal authorities, voluntarily identified himself as the individual depicted in photographs released by the FBI, voluntarily disclosed his identity to the United States Attorney's Office, and voluntarily arranged his own surrender.

30. Nevertheless, federal officials continued to characterize Plaintiff as a danger to the community and a flight risk and sought his continued detention despite possessing information

demonstrating Plaintiff's willingness to cooperate with law enforcement and submit himself to the jurisdiction of the Court.

31. Accordingly, Plaintiff was denied bond and was subject to pre-trial detention at the D.C. Jail.

32. The Deputy Warden of the D.C. Jail was defendant Deputy Warden Landerkin, who was known to have extreme animus toward Trump supporters.

33. This animus was expressed by making the following now-deleted posts on the social media site "X" (formerly known as Twitter):

a. "F--- everyone who supports Trump" (November 24, 2019);

b. "How are we allowing Trump and his lackeys destroy our country?" (November 24, 2019);

c. "About time they stop giving Trumps mouthpieces time to spew their lies" (February 8, 2020);

d. "Trump is doing more damage to this county then foreign terrorists ever have" (September 11, 2020);

e. "… if you are in the crowd behind Trump you are trash. While very animated, you are without conscious, feeling or morals…" (October 13, 2019);

f. "… Republican fascist" (July 27, 2019).[1]

34. Despite this known animus, the United States government, by and through its employees defendants Marshal Washington and Marshal Dixon, placed Plaintiff in the D.C. Jail for his pre-trial detention.

---

[1] https://x.com/alexbruesewitz/status/1469666224552517637

35. Upon information and belief, Defendants Washington and Dixon were responsible, in whole or in part, for decisions regarding the placement, transfer, housing, and continued detention of federal pretrial detainees, including January 6th Defendants housed at the D.C. Jail.

36. Upon information and belief, Washington and Dixon knew or reasonably should have known that Deputy Warden Landerkin had publicly expressed hostility toward supporters of President Donald J. Trump and individuals associated with the January 6 protests.

37. The statements attributed to Deputy Warden Landerkin were publicly available and widely circulated, including through social-media posts and public reporting.

38. Upon information and belief, Washington and Dixon knew or reasonably should have known that the continued placement of January 6 detainees in a facility operated by officials harboring such animus created a substantial risk that those detainees would be subjected to discriminatory treatment, punitive conditions, unequal treatment, retaliation, or other constitutional deprivations.

39. Despite that knowledge, Washington and Dixon continued authorizing, approving, maintaining, or permitting Plaintiff's placement and continued detention at the D.C. Jail.

40. Upon information and belief, Washington and Dixon received inspection reports, grievances, judicial findings, or other notice concerning the conditions affecting January 6 detainees and nevertheless continued Plaintiff's placement there.

41. During his detention, Plaintiff was presumed innocent and had not been convicted of any offense.

42. During his detention, Plaintiff was housed among a group of detainees commonly referred to by correctional officials, government personnel, media organizations, and the public as "January 6th Detainees."

43. Upon information and belief, January 6th Detainees were subjected to restrictions, conditions, and treatment materially different from those imposed upon similarly situated federal pretrial detainees who were not charged in connection with events occurring on January 6, 2021.

44. Plaintiff, a devout Christian, was denied religious services religious materials such as complete Bibles, and access to chaplins and other religious leaders, while he was detained at the D.C. Jail.

45. Plaintiff and other January 6th Detainees were subjected to prolonged lockdowns, extensive restrictions on movement, recreation, social interaction, and visitation. These restrictions resulted in severe emotional distress, isolation, and deterioration of family relationships.

46. Plaintiff and other January 6th Detainees repeatedly attempted to challenge these conditions through the grievance process. Correctional staff routinely obstructed those efforts by refusing grievance forms, delaying responses, altering submissions, discouraging complaints, and retaliating against detainees who sought administrative review.

47. The conditions imposed upon Plaintiff were not the product of individualized security assessments.

48. Plaintiff did not present a unique institutional threat that justified the restrictive conditions under which he was confined.

49. Defendants nevertheless maintained these restrictions for prolonged periods of time.

50. Upon information and belief, Defendants were aware of widespread complaints concerning the treatment of January 6th Detainees and the conditions under which they were confined.

51. Defendants received grievances, correspondence, reports, complaints, media inquiries, and other information placing them on notice of the conditions described herein.

52. Despite such notice, Defendants failed to take reasonable steps to remedy the unconstitutional conditions imposed upon Plaintiff.

53. The conditions described herein were excessive in relation to any legitimate governmental objective and functioned as punishment of Plaintiff before adjudication of guilt.

54. Plaintiff was eventually transferred to Federal Medical Center, Fort Worth, a federal prison operated by the Federal Bureau of Prisons located in Fort Worth, Texas.

55. During the course of his pre-trial detention, Plaintiff suffered physical and psychological injuries, as will be further described below.

56. On January 20, 2025, President Trump, on the first day of his second term, granted pardons and commuted sentences of approximately 1,500 to 1,600 of the January 6th Defendants, including Plaintiff. The Attorney General was directed to dismiss all pending indictments relating to the activities at the Capitol on January 6th, 2021.

57. Accordingly, on January 21, 2025, the U.S. government made a motion to dismiss the indictment against Plaintiff. The motion was granted on the same day and all counts against Plaintiff were dismissed.

## **THE GOVERNMENT'S JANUARY 6 ENFORCEMENT CAMPAIGN**

58. Following January 6, 2021, the United States Department of Justice publicly announced that the investigation and prosecution of January 6 defendants would constitute one of the largest criminal enforcement efforts in the history of the Department.

59. At all relevant times, Defendant Merrick Garland served as Attorney General of the United States and exercised supervisory authority over Department-wide policies concerning January 6 investigations and prosecutions.

60. At all relevant times, Defendant Matthew Graves served as United States Attorney for the District of Columbia and exercised supervisory authority over January 6 prosecutions within the District of Columbia.

61. Throughout their respective tenures, Garland and Graves repeatedly described January 6 prosecutions as among the Department's highest priorities and publicly emphasized the importance of those prosecutions in official statements, media appearances, congressional testimony, and Department of Justice communications.

62. Upon information and belief, Garland and Graves approved, implemented, supervised, ratified, or knowingly permitted investigative, charging, detention, plea-negotiation, sentencing, and appellate policies applicable to January 6 defendants, including Plaintiff.

63. Plaintiff alleges that these policies subjected January 6th Defendants, including Plaintiff, to materially harsher investigative, charging, detention, and sentencing practices than similarly situated criminal defendants and were intended, at least in part, to maximize deterrent effect and public example-making.

## AS AND FOR A FIRST CAUSE OF ACTION

*42 U.S.C. § 1983*
*Violation of the First and Fifth Amendments*
*Unconstitutional Conditions of Pretrial Confinement*

64. Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

65. At all relevant times, Plaintiff was a federal pretrial detainee housed at the D.C. Jail and was presumed innocent of all criminal charges.

66. Defendant Landerkin and the Doe Defendants acted under color of District of Columbia law.

67. The First Amendment protects the rights of individuals to engage in political speech, political association, expressive activity, petitioning activity, and other constitutionally protected conduct free from government retaliation, viewpoint discrimination, or political reprisal.

68. The Due Process Clause of the Fifth Amendment prohibits the punishment of pretrial detainees prior to an adjudication of guilt.

69. Plaintiff was detained because he had been charged in connection with the events of January 6, 2021 and was housed among other detainees similarly charged.

70. Upon information and belief, Defendants viewed Plaintiff and other January 6 detainees with hostility because of their actual or perceived political beliefs, political associations, support for President Donald J. Trump, participation in political demonstrations, and opposition to positions favored by Defendants.

71. Upon information and belief, Defendants intentionally subjected Plaintiff and other January 6 detainees to restrictions, conditions, and treatment materially different from those imposed upon similarly situated pretrial detainees who were not associated with January 6.

72. These restrictions included, but were not limited to, prolonged lockdowns, severe limitations on movement, recreation, visitation, communication, social interaction, and access to ordinary privileges afforded to other detainees.

73. Plaintiff further attempted to challenge these conditions through available grievance procedures and other complaints. Defendants obstructed, discouraged, ignored, altered, delayed, or retaliated against such efforts.

74. The restrictions imposed upon Plaintiff were not the product of individualized security determinations, disciplinary findings, or legitimate correctional necessities specific to Plaintiff.

75. Rather, upon information and belief, Defendants imposed and maintained these restrictions because of Plaintiff's actual or perceived political beliefs, associations, expressive conduct, protected activity, status as a January 6 defendant, and/or his attempts to complain about unconstitutional treatment.

76. The conditions imposed upon Plaintiff were excessive in relation to any legitimate governmental objective and were not reasonably related to institutional security, order, or administration.

77. As a result, the conditions functioned as punishment imposed upon Plaintiff before any adjudication of guilt.

78. By intentionally imposing punitive restrictions unrelated to legitimate governmental objectives, Defendants violated Plaintiff's rights under the Due Process Clause of the Fifth Amendment.

79. By imposing adverse treatment because of Plaintiff's actual or perceived political beliefs, political associations, protected expressive activity, status as a January 6 defendant, and/or complaints regarding jail conditions, Defendants violated Plaintiff's rights under the First Amendment.

80. Defendants acted intentionally, willfully, maliciously, recklessly, and with deliberate indifference to Plaintiff's constitutional rights.

81. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of liberty, emotional distress, humiliation, anxiety, psychological injury, pain and suffering, damage to reputation, and other economic and non-economic damages.

## AS AND FOR A SECOND CAUSE OF ACTION

*Fifth Amendment Equal Protection* – Bivens
*Federal Individual Defendants*

82. Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

83. Defendants Garland and Graves (the "DOJ Defendants") personally participated in, approved, implemented, supervised, ratified, or knowingly permitted Department of Justice policies and practices governing the investigation, charging, detention, prosecution, and sentencing of January 6th Defendants, including Plaintiff.

84. Upon information and belief, those policies included aggressive detention positions, enhanced charging decisions, and litigation strategies designed to increase detention exposure, sentencing exposure, prosecutorial leverage, public deterrence, and public example-making in January 6th cases.

85. Plaintiff alleges that the DOJ Defendants intentionally subjected January 6th Defendants, including Plaintiff, to investigative, charging, detention, and prosecutorial practices materially different from those employed against similarly situated criminal defendants because of their actual or perceived political viewpoints, associations, and participation in events occurring on January 6, 2021.

86. Upon information and belief, the DOJ Defendants received regular briefings concerning January 6th investigations and prosecutions, were aware of the policies challenged herein, and knowingly approved, ratified, or permitted their continued implementation.

87. No sufficient governmental interest justified the disparate treatment imposed upon Plaintiff. In the alternative, Defendants lacked a rational basis for treating Plaintiff differently from similarly situated defendants prosecuted for comparable conduct.

88. The DOJ Defendants' conduct violated the equal protection component of the Fifth Amendment and directly and proximately caused Plaintiff to suffer loss of liberty, emotional distress, reputational injury, economic loss, and other damages.

## AS AND FOR A THIRD CAUSE OF ACTION

*Fifth Amendment Due Process – Bivens*
*Deliberate Indifference to Known Risk of Constitutional Injury*
*Defendants Donald W. Washington and Robert Anthony Dixon*

89. Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

90. At all relevant times, Washington and Dixon exercised authority over the placement, transfer, housing, and continued detention of federal pretrial detainees, including Plaintiff and other January 6th Detainees.

91. Upon information and belief, Washington and Dixon knew or reasonably should have known that Deputy Warden Kathleen Landerkin had publicly expressed hostility toward supporters of President Donald J. Trump and individuals associated with January 6, 2021.

92. Upon information and belief, Washington and Dixon further knew or reasonably should have known that placing January 6th Detainees in a facility operated by officials harboring such animus created a substantial risk that those detainees would be subjected to discriminatory treatment, punitive confinement conditions, retaliation, unequal treatment, and other constitutional deprivations.

93. Washington and Dixon received grievances, complaints, correspondence, reports, judicial findings, media coverage, and other information concerning the treatment of January 6th Detainees housed at the D.C. Jail and were therefore on notice of the risks described herein.

94. Despite such notice, Washington and Dixon continued authorizing, approving, maintaining, or permitting Plaintiff's placement and continued detention at the D.C. Jail.

95. Washington and Dixon failed to take reasonable measures to protect Plaintiff from foreseeable constitutional injuries arising from the conditions of confinement and discriminatory treatment described herein.

96. Their actions and omissions were intentional, reckless, malicious, or undertaken with deliberate indifference to Plaintiff's constitutional rights.

97. As a direct and proximate result of the foregoing, Plaintiff suffered loss of liberty, emotional distress, physical injury, reputational harm, and economic damages.

**AS AND FOR A FOURTH CAUSE OF ACTION**

*Abuse of Process – FTCA*

98. Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

99. This claim is asserted solely against Defendant UNITED STATES OF AMERICA (the "United States") pursuant to the Federal Tort Claims Act.

100. Upon information and belief, federal officials used criminal process to obtain collateral objectives unrelated to the proper purpose of criminal proceedings, including increasing Plaintiff's detention exposure, sentencing exposure, litigation burdens, and public stigmatization, and maximizing the deterrent effect of January 6th prosecutions.

101. Upon information and belief, federal officials used criminal process to obtain collateral objectives unrelated to the proper purpose of criminal proceedings, including increasing Plaintiff's detention exposure, sentencing exposure, litigation burdens, and public stigmatization; maximizing the deterrent effect of January 6th prosecutions; and making an example of Plaintiff and similarly situated January 6th Defendants for political, symbolic, and public-relations purposes.

102. These uses of criminal process were not reasonably necessary to secure Plaintiff's appearance in court and were instead intended, at least in part, to increase Plaintiff's confinement, enhance prosecutorial leverage, and maximize the symbolic and deterrent impact of the January 6 prosecutions.

103. Upon information and belief, federal officials further used detention proceedings, detention recommendations, and related criminal process to obtain collateral objectives beyond securing Plaintiff's appearance in court, including increasing Plaintiff's confinement, increasing leverage over Plaintiff, enhancing the exemplary and deterrent effect of January 6 prosecutions, and subjecting Plaintiff to punitive conditions despite information demonstrating that Plaintiff had voluntarily identified himself, voluntarily surrendered, maintained a known residence, and had not attempted to flee or evade judicial process.

104. Despite possessing information demonstrating that Plaintiff had voluntarily identified himself, voluntarily surrendered, maintained a known residence, and was willing to submit himself to judicial process, federal investigative and law-enforcement personnel continued using detention proceedings, detention recommendations, and related criminal process to secure Plaintiff's continued confinement and to advance the collateral objectives described herein.

105. The acts described herein constituted a willful misuse of criminal process for purposes other than those for which such process was designed.

106. As a direct and proximate result of the United States' abuse of process, Plaintiff suffered loss of liberty, emotional distress, reputational injury, economic loss, litigation expenses, and other damages.

107. Defendant United States is liable for those injuries pursuant to the Federal Tort Claims Act.

**AS AND FOR A FIFTH CAUSE OF ACTION**
*Malicious Prosecution - FTCA*

108. Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

109. This claim is asserted solely against Defendant the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680.

110. Acting through federal investigative and law-enforcement personnel acting within the scope of their employment, Defendant United States caused criminal proceedings to be initiated and continued against Plaintiff in *United States v. McKellop*, No. 21-cr-268 (D.D.C.).

111. The conduct giving rise to this claim includes the investigation, presentation, and continued pursuit of the criminal charges against Plaintiff.

112. Defendants continued pursuing charges and detention positions despite substantial exculpatory evidence, despite serious doubts regarding the accuracy of identification evidence, despite contradictory evidence, and despite legal defects in one or more charges.

113. Upon information and belief, federal investigative and law-enforcement personnel continued advocating for Plaintiff's detention and continued prosecution despite possessing information demonstrating that Plaintiff had voluntarily disclosed his identity, voluntarily surrendered to law enforcement, maintained a known residence, and had not attempted to flee, conceal evidence, or evade judicial process.

114. Upon information and belief, federal investigative and law-enforcement personnel acted with malice and for improper purposes, including the desire to secure Plaintiff's continued detention, maximize the punitive and deterrent effect of January 6th prosecutions, subject Plaintiff to public stigmatization, and make an example of Plaintiff and similarly situated January 6th Defendants. Such conduct included continuing to portray Plaintiff as dangerous and unlikely to

appear despite information demonstrating his voluntary cooperation with law enforcement and judicial authorities.

115. The criminal proceedings terminated in Plaintiff's favor when the indictment was dismissed with prejudice and all charges were permanently terminated, resulting in the complete cessation of criminal proceedings against Plaintiff.

116. As a direct and proximate result of the malicious prosecution of, Plaintiff suffered loss of liberty, emotional distress, reputational injury, legal expenses, economic damages, and other injuries.

117. Pursuant to the FTCA, Defendant United States is liable for the injuries and damages proximately caused by the actions of its investigative and law-enforcement personnel acting within the scope of their employment.

**AS AND FOR A SIXTH CAUSE OF ACTION**

*Violation of 42 U.S.C. § 1983*

118. Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

119. Upon incarceration at the D.C. Jail, Plaintiff had an objectively serious medical condition, including a documented history of post-traumatic stress disorder ("PTSD").

120. Defendant Deputy Warden Kathleen Landerkin and John Does 1-25, acting under color of District of Columbia law, knew or should have known of Plaintiff's medical history and his repeated complaints of PTSD.

121. Despite this knowledge, Deputy Warden Landerkin, and John Does intentionally caused and/or created conditions that worsened Plaintiff's PTSD, including but not limited to placing Plaintiff in extended, unnecessary and unwarranted solitary confinement without appropriate mental health attention and treatment.

122. Despite this knowledge, Deputy Warden Landerkin, and John Does intentionally ignored, delayed, or denied appropriate medical attention, including but not limited to necessary and appropriate mental health treatment and care.

123. Such treatment was objectively unreasonable and violated Plaintiff's rights under 42 U.S.C. § 1983.

124. Such treatment was cruel and unusual, and evinced a deliberate indifference to a substantial risk of serious harm to Plaintiff and/or Plaintiff's serious medical need.

125. The aforementioned conduct resulted in Plaintiff suffering permanent and lasting psychological and emotional injuries.

## AS AND FOR A SEVENTH CAUSE OF ACTION

*Medical Malpractice - FTCA*

126. Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

127. Defendant the United States, by and through its employees and agents, owed Plaintiff a duty to provide reasonable and competent medical care consistent with accepted standards.

128. Defendant the United States, by and through its employees and agents, breached that duty by failing to timely diagnose and treat Plaintiff's severe tooth infection, failing to prescribe appropriate medication, and failing to ensure continuity of care.

129. In early 2022, while detained at the D.C. Jail, Plaintiff began suffering from a molar abscess. After filing multiple grievances over four (4) months and begging for antibiotics to treat his infection, he was treated with amoxicillin to partial success. However, the infection resurfaced and ultimately led to complete decay of the tooth.

130. Plaintiff's molar remained infected while he was in the custody of the United States Bureau of Prisons until he was released from prison in January 2025.

131. The afore-described negligence was the direct and proximate result of Plaintiff's injuries.

132. As a direct and proximate result, Plaintiff suffered severe physical injury, prolonged pain and suffering, permanent impairment, and economic loss.

**AS AND FOR AN EIGHTH CAUSE OF ACTION**
*Violation of the Religious Freedom Restoration Act*
*42 U.S.C. §§ 2000bb et seq.*

133. Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

134. Plaintiff is a practicing Christian whose sincerely held religious beliefs require participation in religious worship, access to clergy, prayer, religious counseling, and other forms of religious observance.

135. During Plaintiff's pretrial detention, Defendants Landerkin and John Does 1-25 denied or substantially restricted Plaintiff's ability to participate in religious services, communicate with clergy, receive religious counseling, and otherwise practice his faith.

136. Defendants imposed and maintained these restrictions despite knowing that Plaintiff sought to maintain his religious observance while incarcerated.

137. The restrictions imposed upon Plaintiff substantially burdened his exercise of religion within the meaning of RFRA.

138. Defendants cannot demonstrate that the burdens imposed upon Plaintiff furthered a compelling governmental interest through the least restrictive means.

139. Less restrictive alternatives were readily available, including access to clergy, religious services, religious materials, and other accommodations routinely provided within correctional facilities.

140. Defendants' conduct violated RFRA, 42 U.S.C. § 2000bb-1.

141. As a direct and proximate result of Defendants' conduct, Plaintiff suffered spiritual injury, emotional distress, humiliation, mental anguish, and other damages.

**AS AND FOR AN NINTH CAUSE OF ACTION**
*Intentional Infliction of Emotional Distress - FTCA*

142. Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

143. Defendant the United States, by and through its employees and agents, engaged in extreme and outrageous conduct, including placing Plaintiff, with a known history of PTSD, in excessive and unwarranted solitary confinement, detaining and imprisoning Plaintiff in substandard and unsanitary conditions, fabricating disciplinary charges against Plaintiff while Plaintiff was in pretrial detention, and withholding Plaintiff's discovery material from him while Plaintiff was in pretrial detention.

144. Defendant the United States, by and through its employees and agents, acted intentionally or with reckless disregard of the high probability that their conduct would cause severe emotional distress.

145. The afore-described conduct was the proximate cause of Plaintiff's injuries.

146. As a result of the afore-described conduct, Plaintiff suffered severe emotional distress, including anxiety, trauma, humiliation, sleep disturbance, and fear of permanent disability or death.

**WHEREFORE**, and for the foregoing reasons, Plaintiff respectfully requests that the Court enter judgment in the Plaintiff's favor,

a. Awarding compensatory damages to the Plaintiff, plus post-judgment interest;

b. Awarding punitive damages to the Plaintiff;

c. Awarding Plaintiff reasonable costs, disbursements, and attorney's fees; and

d. Awarding any such other and further relief as this Court finds is required in the interest of justice.

Dated: October 23, 2026
New York, New York

Respectfully submitted,

/s/*Alexander Lonstein*
Alexander Lonstein
RAISER, KENNIFF & LONSTEIN, P.C.
99 Park Avenue, Suite 1530
New York, NY 10016
alexander@rkl.law